FILED
2021 MAR 30 PM 12:17
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PREMIER SLEEP SOLUTIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SOUND SLEEP MEDICAL, LLC, *et al.*,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR PARTIAL DISMISSAL**<br><br>Case No. 2:20-cv-00062-JNP-JCB<br><br>District Judge Jill N. Parrish |

Before the court are two motions for partial dismissal of Plaintiff Premier Sleep Solutions, LLC's ("PSS") First Amended Complaint (ECF No. 9). The first is filed by Defendants Aubrey Green Angus ("Angus")[1] and Kiaya Kilpack ("Kilpack"). ECF No. 22. The second is filed by Defendants Sound Sleep Medical, LLC ("Sound Sleep") and David Larsen ("Larsen"). ECF No. 26. The court grants in part and denies in part Defendants' motions.

## BACKGROUND

PSS is a sleep dentistry business established in May 2012 that provides custom fit oral appliances to patients who have been diagnosed with sleep apnea or other obstructive sleep disorders. PSS has multiple office locations in Utah, Texas, California, and Nevada and also treats patients from Idaho, Wyoming, and Arizona. PSS stores its patient leads, patient records, and

---

[1] Pursuant to the court's Order Granting Motion to Substitute Party, Defendant Kiaya Kilpack, as the Representative of the Estate of Aubrey Green Angus, has been substituted for Defendant Aubrey Green Angus. ECF No. 50.

billing histories on a web-based medical practice records management and billing software program called Kareo. Because of the confidential nature of this information, only PSS employees can access Kareo using their own unique log-in information.

PSS hired Angus as office manager for its Midvale, Utah location on February 28, 2014. On September 29, 2014, PSS hired Kilpack, who was later promoted to assistant office manager at the same office. Angus signed an employment agreement (ECF No. 9-1), which PSS attached to its First Amended Complaint (the "Complaint"). PSS did not attach a copy of Kilpack's signed employment agreement (*see* ECF No. 9) but alleges that "Kilpack signed an identical or nearly identical form of employment agreement to that form signed by Angus." *Id.* at 11. As office manager and assistant office manager, Angus and Kilpack were responsible for providing services directly to PSS patients and processing PSS's accounts. In their positions, Angus and Kilpack also had access to PSS's Kareo database, hard-copy patient files, proprietary office forms, marketing media, and other confidential business records.

On November 21, 2017, Angus and Kilpack terminated their employment with PSS. PSS alleges that, for months prior to leaving PSS, Angus and Kilpack were actively working with Larsen to plan the formation of Sound Sleep, a company created to directly compete with PSS. During the months prior to their departure, while still employed at PSS, Angus and Kilpack spoke openly about leaving PSS to work for Sound Sleep; met with Larsen, who wanted Angus to be the manager of all Sound Sleep business operations; solicited PSS employees to work for Sound Sleep; planned and set up business operations for Sound Sleep; copied PSS documents for Sound Sleep; and removed patient information and/or insurance contracts from PSS's Midvale, Utah office. Forensic searches of Angus's and Kilpack's computers revealed documents related to the formation of Sound Sleep, PSS's proprietary office forms and professional contacts downloaded to Angus

2

and Kilpack's personal folders, documents signed by Angus identifying herself as the manager of Sound Sleep, and that Angus and Kilpack had repeatedly accessed demographic and contact information of existing and prospective PSS patients. Following Angus and Kilpack's departure, PSS patients received Sound Sleep advertisements in the mail.

Based on the foregoing allegations, PSS asserts the following claims: violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, against all Defendants (Count I); violation of the Utah Uniform Trade Secrets Act ("UTSA"), UTAH CODE § 13-24-1 *et seq.*, against all Defendants (Count II); breach of contract (covenant not to solicit) against Angus and Kilpack (Counts III and IV, respectively); breach of contract (confidentiality and nondisclosure) against Angus and Kilpack (Counts V and VI, respectively); breach of fiduciary duty of confidentiality against Angus and Kilpack (Count VII); breach of fiduciary duty of loyalty against Angus and Kilpack (Count VIII); inducement of breach of fiduciary duty against Larsen and Sound Sleep (Count IX); tortious interference with contract against Larsen and Sound Sleep (Count X); alternatively, tortious interference with business relationship or expectancy against Larsen and Sound Sleep (Count XI); alternatively, civil conspiracy against all Defendants (Count XII); and constructive trust against Sound Sleep (Count XIII).

Defendants Angus and Kilpack now seek dismissal under Federal Rule of Civil Procedure 12(b)(6) of PSS's third, fourth, sixth, seventh, eighth, and twelfth causes of action. ECF No. 22. Defendants Larsen and Sound Sleep seek dismissal under Rule 12(b)(6) of PSS's ninth, tenth, eleventh, twelfth, and thirteenth causes of action. ECF No. 26.

## LEGAL STANDARD

Dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

Defendants Angus and Kilpack move to dismiss the following claims against them: breach of contract (covenant not to solicit) (Counts III and IV); breach of contract (confidentiality and nondisclosure) (Count VI); breach of fiduciary duty of confidentiality (Count VII); breach of fiduciary duty of loyalty (Count VIII); and civil conspiracy (Count XII). Defendants Larsen and Sound Sleep move to dismiss the following claims against them: inducement of breach of fiduciary duty (Count IX); tortious interference with contract (Count X); tortious interference with business relationship or expectancy (Count XI); civil conspiracy (Count XII); and constructive trust (Count XIII).

## I.    Breach of Contract Claim Against Angus (Count III)

Defendants Angus and Kilpack argue that PSS's third cause of action against Angus for breach of contract in violation of the covenant not to solicit should be dismissed because Angus's alleged conduct does not violate the express terms of her employment agreement.

The contractual provision at issue—Section 6.6, titled "Solicitation"—provides:

4

> The EMPLOYEE agrees not to engage in and/or accept the solicitation of direct employment, or become employed by the Patient and/or any party financially responsible for any Patient, prior to: (i) six (6) months after termination of any Patient agreement, or (ii) six (6) months after the PSS Employee has ceased to be employed by PSS; whichever is earlier, unless otherwise agreed to in writing by both parties. The EMPLOYEE may also be subject to legal actions and remedies for any violation of this section.

ECF No. 9-1 at 2. PSS alleges that Angus breached the "Solicitation" provision by "unlawfully removing PSS's patient records and proprietary sleep dentistry practice forms, soliciting or inducing PSS patients to switch to Sound Sleep, and otherwise interfering with PSS's business and contractual relationships." ECF No. 9 ¶ 122. Angus and Kilpack respond that the "Solicitation" provision merely prohibits PSS employees from becoming employed by patients and/or parties financially responsible for any patients, not from soliciting or inducing PSS patients to switch to Sound Sleep. PSS replies that the word "employ" is "synonymous with 'work' or 'provide services for.'" ECF No. 35 at 11. Thus, PSS argues that it is "employed" by and "provides services" for its patients, and Angus's conduct in soliciting these patients' "employment" for Sound Sleep is therefore prohibited. PSS argues that its interpretation "is consistent with employment contracts regularly entered into," as "[i]t is common for an employer to prohibit an employee from directly soliciting the employer's customers for a reasonable period of time following the employment." *Id.* at 12.

Under Utah law, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014) (citation omitted). "[T]he construction and interpretation of a contract is a question of law to be decided by the judge." *O'Hara v. Hall*, 628 P.2d 1289, 1290 (Utah 1981) (citations omitted).

"When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling." *Bakowski v. Mountain States Steel, Inc.*, 52 P.3d 1179, 1184 (Utah 2002) (citations omitted). "If the language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Id.* (citations omitted). "A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Id.* (citation omitted).

The court does not find the language of the "Solicitation" provision to be ambiguous or to have uncertain meaning. Further, it does not find that PSS's alternative interpretation of the term "employ" is reasonable. The court interprets the provision to mean that a PSS employee cannot solicit a job from a patient or from anyone financially responsible for a patient for the stated period after the employee's employment with PSS has ceased. Given this interpretation, the court does not find that Angus's conduct violates the "Solicitation" provision; Angus did not solicit employment from any PSS patient or from anyone financially responsible for a PSS patient. Even if PSS's interpretation of the "Solicitation" provision is consistent with typical employment contracts in the industry, this cannot be used to circumvent or rewrite the plain language of the contract provision. Because the court does not find that Angus's alleged conduct amounts to a breach of her employment agreement, PSS's third cause of action is dismissed.

## II.    Breach of Contract Claims Against Kilpack (Counts IV and VI)

With respect to PSS's claims against Kilpack for breach of contract for violations of the covenant not to solicit (Count IV) and of confidentiality and nondisclosure (Count VI), Defendants Angus and Kilpack argue: (1) PSS has failed to provide proof that Kilpack signed PSS's

6

employment agreement, so Kilpack cannot have breached the agreement; and (2) even if Kilpack is bound by the agreement, Kilpack's alleged conduct does not violate the agreement.

    A.      Absence of Proof of Kilpack's Employment Agreement

    First, Angus and Kilpack argue that PSS's breach of contract claims against Kilpack should be dismissed because PSS has failed to produce a signed copy of Kilpack's alleged employment agreement. Angus and Kilpack argue that, without such proof that Kilpack signed the agreement, Kilpack is not bound by the agreement and therefore could not have breached it.

    In light of the rules applicable to evaluating the sufficiency of a complaint at the motion to dismiss stage, the court disagrees with Angus and Kilpack's argument. Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). And, as noted above, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. None of these standards require a plaintiff to attach documentary evidence to its complaint. If a plaintiff has alleged sufficient facts to state a plausible claim, documentary evidence is not necessary to survive a motion to dismiss.

    In alleging a breach of contract claim, a plaintiff need not attach the contract at issue to the complaint; "[p]lausible allegations supporting the existence of a contract [are] sufficient." *JIVE Commerce, LLC v. Wine Racks Am., Inc.*, No. 1:18-CV-49, 2019 WL 1298022, at *2 (D. Utah Mar.

7

21, 2019) (unpublished); *see also Real Estate Sch. of Nev. v. Kapp*, No. 2:15-CV-43, 2015 WL 4729132, at *5 (D. Utah Aug. 10, 2015) (unpublished) (denying a motion to dismiss a breach of contract claim in part because sufficient facts were pleaded to allege the existence of a contract even though "[t]here are no clear allegations . . . whether any documentary evidence exists"). PSS has alleged that Kilpack was an employee of PSS for a number of years, PSS employees like Angus sign an employment agreement, and PSS had Kilpack sign an employment agreement that was the same or substantially similar to Angus's agreement. These factual allegations, taken as true, sufficiently allege that Kilpack is bound to a PSS employment agreement that is identical or nearly identical to Angus's agreement. That PSS has failed to provide documentary evidence of Kilpack's employment agreement does not compel dismissal of PSS's breach of contract claims against Kilpack at this juncture. Since the court finds that Kilpack can be bound by the PSS employment agreement, the court must now determine whether PSS has sufficiently pleaded its breach of contract claims against Kilpack.

      B.     Kilpack's Alleged Violations of the Employment Agreement

Defendants' second argument for dismissal of PSS's fourth cause of action is that, even if Kilpack is bound to a contract that is identical to Angus's contract, Kilpack's alleged conduct does not violate the terms of the contract. The same prima facie breach of contract elements and standards of contract interpretation set out in Section I apply to this analysis.

      1)     Count IV: Breach of Contract – Covenant Not to Solicit

As with its claims of breach of the covenant not to solicit against Angus, PSS alleges that Kilpack similarly breached the "Solicitation" provision of her contract by "unlawfully removing PSS's patient records and proprietary sleep dentistry practice forms, soliciting or inducing PSS patients to switch to Sound Sleep, and otherwise interfering with PSS's business and contractual

8

relationships." ECF No. 9 ¶ 127. The court finds that PSS has failed to state a claim against Kilpack for breach of the "Solicitation" contract provision. As with Angus, the court does not find that Kilpack's conduct is prohibited under the provision's plain language. Thus, this claim is dismissed.

2)      Count VI: Breach of Contract – Confidentiality and Nondisclosure

Apart from their argument that PSS's sixth cause of action should be dismissed because Kilpack is not contractually bound to PSS, Defendants do not raise any other arguments as to why PSS's sixth cause of action should be dismissed. Accordingly, since the court found that PSS has sufficiently alleged that Kilpack is contractually bound by the PSS employment agreement, the court denies the motion to dismiss as to this count.

**III.     Breach of Fiduciary Duty of Confidentiality Claim Against Angus and Kilpack (Count VII)**

In its seventh cause of action, PSS alleges that Angus and Kilpack breached their fiduciary duty of confidentiality under Utah law "by taking confidential property and information with them when they left their employment with PSS[,] . . . [and] by using PSS's confidential information to compete with PSS on behalf of themselves and Sound Sleep." ECF No. 9 ¶¶ 143–44. PSS also alleges a cause of action against Angus and Kilpack under the UTSA for misappropriation of trade secrets. *See id.* ¶¶ 97–119.

The UTSA has a preemption provision that provides:

(1) Except as provided in Subsection (2), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
(2) This chapter does not affect:
    (a) contractual remedies, whether or not based upon misappropriation of a trade secret;
    (b) other civil remedies that are not based upon misappropriation of a trade secret; or

(c) criminal remedies, whether or not based upon misappropriation of a trade secret.

UTAH CODE § 13-24-8. In interpreting the scope of the UTSA preemption provision, the Utah Court of Appeals held that "a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information." *CDC Restoration & Constr., LC v. Tradesman Contractors, LLC*, 274 P.3d 317, 331 (Utah Ct. App. 2012) (citation omitted). Accordingly, "if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective o[f] whatever surplus elements of proof were necessary to establish it." *Id.* (citation omitted). "However, to whatever extent that a claim is 'based upon wrongful conduct independent of the misappropriation of trade secrets' or otherwise confidential information, it is not preempted." *Id.* (citation omitted). This interpretation of the preemption provision "preserves the UTSA as the sole noncontractual civil remedy for misappropriation of a trade secret, while preserving tort, restitutionary, and other causes of action that 'seek [ ] to remedy an injury caused not by the misappropriation of proprietary information, but by separate conduct.'" *Id.* (citation omitted).

In *CDC Restoration*, a business alleged that its employee had breached his fiduciary duty to the business. *Id.* The business had provided the employee with access to its confidential information and trade secrets, and the employee had a duty not to disclose that information, use the information to unfairly compete with the business, or use the information for the benefit of a new business. *Id.* at 331–32. The court found that the claim was preempted by the UTSA "in its entirety" because an "[e]xamination of the factual allegations underlying" the claim revealed that it was "based solely on theories of misappropriation or misuse of . . . confidential information." *Id.*

Here, Defendants Angus and Kilpack cite *CDC Restoration* and argue that PSS's claim for breach of the fiduciary duty of confidentiality is preempted by the UTSA because all of the facts that PSS alleges as part of this claim relate to Angus and Kilpack allegedly misappropriating PSS's confidential information. In response, PSS voluntarily withdrew this claim, acknowledging that it is preempted by the UTSA. Accordingly, the court dismisses this cause of action.

## IV. Breach of Fiduciary Duty of Loyalty Claim Against Angus and Kilpack (Count VIII)

Defendants Angus and Kilpack argue that PSS's eighth cause of action for breach of the fiduciary duty of loyalty should be dismissed for three reasons: (1) the claim is preempted in part by the UTSA; (2) the claim is insufficiently pleaded; and (3) the alleged conduct does not violate the fiduciary duty of loyalty.

### A. Preemption Under the UTSA

Angus and Kilpack assert that PSS's allegation that they breached their duty of loyalty by "transferring PSS's confidential property and information to Larsen and Sound Sleep" (ECF No. 9 ¶ 149) pertains to the misuse of confidential information and therefore is preempted by the UTSA. Plaintiff does not respond to this argument, but the court will still address it here.

The only authority that Defendants cite in support of their position is *CDC Restoration*. As previously stated, *CDC Restoration* held that "a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information," but also that "to whatever extent that the claim is 'based upon wrongful conduct independent of the misappropriation of trade secrets' or otherwise confidential information, it is not preempted." 274 P.3d at 331 (citations omitted).

The full scope of PSS's factual allegations related to the breach element of its breach of fiduciary duty of loyalty claim are:

> Angus and Kilpack breached their duty of loyalty to PSS by diverting potential customers and PSS resources to Sound Sleep while still employed by PSS, by withholding business opportunities from PSS while still employed by PSS, by otherwise competing with PSS while still employed by PSS, by using time while being paid by PSS to set up and further the business interests of Sound Sleep, and by transferring PSS's confidential property and information to Larsen and Sound Sleep.

ECF No. 9 ¶ 149. Only the final allegation pertains to misappropriation of trade secrets or other confidential information. *CDC Restoration* does not stand for the proposition that an entire claim is precluded simply because one of the underlying factual allegations is based upon misappropriation of trade secrets or other confidential information; rather, *CDC Restoration* permits a claim to endure to the extent that the claim relates to conduct independent of the misuse of confidential information. *See* 274 P.3d at 331 (citations omitted). The standard is whether "the claim fails without allegations regarding misuse of information," in which case the UTSA preempts the claim. *Giles Constr., LLC v. Tooele Inventory Sol., Inc.*, No. 2:12-CV-37, 2015 U.S. Dist. LEXIS 72722, at *19 (D. Utah June 2, 2015) (unpublished). PSS's final allegation that Defendants transferred PSS's confidential property and information to Larsen and Sound Sleep is "based on factual allegations supporting a misappropriation of trade secrets and otherwise confidential information." *CDC Restoration*, 274 P.3d at 331 (citation omitted). But the other four allegations are "independent" of the misuse of information. *Id.* The court finds that the claim does not "fail" without the final allegation. Thus, the court denies the motion to dismiss based on UTSA preemption.

B.  Sufficiency of the Pleading

Angus and Kilpack also argue that PSS's claim based on breach of the fiduciary duty of loyalty should be dismissed because it is stated in a "conclusory manner only." ECF No. 22 at 14,

19. Angus and Kilpack argue that PSS fails to allege sufficient facts to establish that they breached this duty *while* employed by PSS since its allegations focus on facts related to what happened *after* they left PSS. The court disagrees.

"To prove a claim for breach of fiduciary duty, a plaintiff must establish the existence of a fiduciary duty and the breach of that duty." *KAM Fin. v. Silverleaf Fin.*, No. 2:12-CV-1111, 2015 WL 1432610, at *13 (D. Utah Mar. 27, 2015) (unpublished) (citing *Prince, Yeates & Geldzahler v. Young*, 94 P.3d 179, 184–85 (Utah 2004)). The fiduciary duty of loyalty arises out of an agent's "fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." RESTATEMENT (THIRD) OF AGENCY § 8.01 (Am. Law Inst. 2006). "[A]lthough it is most common for courts to address the fiduciary duties of corporate officers and directors, 'there is no basis for concluding these are the only types of agents subject to fiduciary duties.'" *KAM Fin.*, 2015 WL 1432610, at *13 (quoting *Prince*, 94 P.3d at 185). There are several factors to consider to determine the existence of a fiduciary relationship: (1) "a position of peculiar confidence placed by one individual in another"; (2) "a person with a duty to act primarily for the benefit of another"; (3) a person "in a position to have and exercise and does have and exercise influence over another"; (4) "a condition of superiority of one of the parties over the other"; (5) "the property, interest or authority of the other is placed in the charge of the fiduciary"; (6) "a continuous trust is reposed by one party in the skill and integrity of another"; and (7) "a certain inequality, dependence, weakness of age, of mental strength, business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other." *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1333 (Utah 1990) (citations omitted). "Whether or not a confidential or fiduciary relationship exists depends on the facts and circumstances of each individual case." *Id.* at 1332 (citation omitted).

13

The Utah Supreme Court has stated that it "need not, and do[es] not, decide . . . whether all 'mere employees' owe fiduciary duties to their employers not to compete with the employer's legitimate business interests." *Prince*, 94 P.3d at 185 n.2; *see also Wachocki v. Luna*, 330 P.3d 717, 721–22 (Utah Ct. App. 2014) ("[T]he Utah Supreme Court has explicitly left open the question of whether every 'mere employee' owes a duty of loyalty to not compete with her employer." (citation omitted)). Nevertheless, in *Prince*, the Utah Supreme Court also stated that it was "incorrect to conclude . . . that employees necessarily have *no* fiduciary duties to their employers." 94 P.3d at 185; *see also Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 505 F. Supp. 2d 1178, 1187 (D. Utah 2007) (citing *Prince* for the proposition that "Utah courts recognize a fiduciary duty between an employer and employee"). Indeed, the *Prince* court ultimately held that a lawyer breached a duty of loyalty he owed to his law firm employer when he represented clients using the firm's name without the firm's knowledge or consent, expended firm resources in connection with the matters, and withheld all fees earned from these matters for himself. 94 P.3d at 185.

The court finds that there is a fiduciary duty of loyalty here based on PSS's employment of Angus and Kilpack to act for the benefit of PSS, and the responsibilities and access to confidential information that Angus and Kilpack had in the course of their employment. Thus, the court need only determine whether PSS has sufficiently alleged a breach of this duty of loyalty. PSS's allegations of breach include the following: that Angus and Kilpack "divert[ed] potential customers and PSS resources to Sound Sleep while still employed by PSS, . . . withh[eld] business opportunities from PSS while still employed by PSS, . . . otherwise compet[ed] with PSS while still employed by PSS, . . . [and] us[ed] time while being paid by PSS to set up and further the business interests of Sound Sleep." ECF No. 9 ¶ 149. Additionally, PSS "incorporates and restates all other paragraphs of this Amended Complaint as though fully set forth herein." *Id.* ¶ 146. In

14

those other paragraphs, PSS alleges that Angus and Kilpack, "while still employed by PSS and in many instances during workdays while they were being paid by PSS, were actively working in concert and plotting with Larsen to form Sound Sleep, an intended direct competitor to PSS, and set up office locations throughout Utah." *Id.* ¶ 58. Also, in the months prior to their departure from PSS, Angus and Kilpack solicited patients and employees from PSS on behalf of Sound Sleep, formulated a business plan with Larsen, and filed and prepared documents on behalf of Sound Sleep, using their PSS computers. *Id.* ¶¶ 5–6, 59, 61–62. PSS also alleges that Angus signed a form as the manager of Sound Sleep while she was still employed at PSS. *Id.* ¶ 65.

The court finds that these allegations are not merely conclusory and that they identify conduct by Angus and Kilpack during their employment at PSS, as opposed to only after their departure. Accordingly, the court denies Defendants' motion to dismiss as to PSS's eighth cause of action on these grounds. *See Farm Bureau*, 505 F. Supp. 2d at 1188 (denying summary judgment because an employee's plans to leave his company and "recruit its top producers to join him" at another company raised a genuine dispute of a material fact as to whether the employee breached his fiduciary duty of loyalty to his employer).

C.  Preparations to Compete as Violating the Duty of Loyalty

Finally, Angus and Kilpack argue that PSS's eighth cause of action should be dismissed because their alleged conduct amounts to planning to compete with PSS in the future, which is not a violation of the duty of loyalty.

Under the Restatement (Third) of Agency, "an agent's duty as a fiduciary is to act loyally for the principal's benefit in all matters connected with the agency relationship." RESTATEMENT (THIRD) OF AGENCY § 8.01 (Am. Law Inst. 2006); *see also Prince*, 94 P.3d at 184–85 (citing to the

Restatement (Second) of Agency for the same principle). Section 8.04 of the Restatement, titled

"Competition," provides:

> Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors. During that time, an agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship.

RESTATEMENT (THIRD) OF AGENCY § 8.04. Thus, "actions prior to termination of an agency

relationship that constitute mere preparation for competition . . . do not contravene an employee's

or other agent's duty to the principal." *Id.* § 8.04 cmt. c; *see also Spencer Law Office, LLC v. Dep't*

*Workforce Servs.*, 302 P.3d 1257, 1263 (Utah Ct. App. 2013) ("[A]n 'employee may properly plan

to go into competition with his employer and may take active steps to do so while employed'

and . . . 'he may secretly join other employees in the endeavor without violating any duty to his

employer.'" (citation omitted)). But "an agent or employee is not free, *while still employed*, to

commence doing business as a competitor or to solicit customers away from the principal."

RESTATEMENT (THIRD) OF AGENCY § 8.04 cmt. c (emphasis added); *see also Scenic Aviation, Inc.*

*v. Blick*, No. 2:02-CV-1201, 2003 U.S. Dist. LEXIS 28009, at * 33–34 (D. Utah Aug. 4, 2003)

(unpublished) (granting summary judgment for employees when employer failed to allege that the

employees' solicitation of the employer's customers occurred *during* the employees' employment).

      Here, PSS has alleged more than mere preparations to compete. It alleges that Angus and

Kilpack engaged in the solicitation of PSS clients and employees prior to their departure from PSS.

The court therefore denies the motion to dismiss on these grounds. *See Farm Bureau*, 505 F. Supp.

2d at 1188–89 (finding that evidence of an agent's "numerous contacts" with a competing business

"raise a reasonable inference that [the agent] breached his fiduciary duty and duty of loyalty to [his

employer] because he was planning to leave [his employer] and to recruit its top producers to join him at [a competing business]").

## V.     Inducement of Breach of Fiduciary Duty Claim Against Larsen and Sound Sleep (Count IX)

Defendants Larsen and Sound Sleep argue that PSS's ninth cause of action should be dismissed because it is "for inducing Angus and Kilpack to disclose confidential information," rendering the claim preempted by the UTSA. ECF No. 26 at 6. PSS alleges that "Larsen and Sound Sleep knowingly induced, aided, and encouraged Angus and Kilpack to breach their fiduciary duties of loyalty and confidentiality for the benefit of Larsen and Sound Sleep." ECF No. 9 ¶ 153. While PSS concedes that "any claim based upon the fiduciary duty of confidentiality is preempted under current interpretations of the UTSA," PSS maintains that the same is not true for its inducement claim based upon the fiduciary duty of loyalty. ECF No. 36 at 8.

Although no Utah state courts have recognized a cause of action for inducing an employee to breach a fiduciary duty owed to an employer, a District of Utah court has found that "substantial support from other jurisdictions and the Restatement (Second) of Torts" indicate that "the Utah state courts, if faced with the issue, would recognize such a cause of action." *Farm Bureau*, 505 F. Supp. 2d at 1190. Under the Restatement, "[f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." RESTATEMENT (SECOND) OF TORTS § 876(b) (Am. L. Inst. 1979). And, while the Utah Court of Appeals has held that "a claim is preempted [by the UTSA] to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information," it also held that, "to whatever extent that the claim is 'based upon wrongful conduct

independent of the misappropriation of trade secrets' or otherwise confidential information, it is not preempted." *CDC Restoration*, 274 P.3d at 331 (citations omitted).

Based on this precedent from the Utah Court of Appeals and PSS's concession, the court finds that PSS's ninth cause of action as it relates to inducing the breach of the fiduciary duty of confidentiality is preempted by the UTSA. *See id.* (finding that a breach of fiduciary duty claim was preempted by the UTSA because the claim was based "*solely* on theories of misappropriation or misuse . . . of confidential information" (emphasis added)).

However, the court finds that PSS's inducement claim as it pertains to the duty of loyalty is not based solely on the misuse of confidential information and thus is not preempted by the UTSA. As discussed in Section IV, only one of PSS's factual allegations related to Angus and Kilpack's alleged breach of the fiduciary duty of loyalty pertains to misappropriation of trade secrets or other confidential information. Under *CDC Restoration*, a claim endures to the extent that the claim relates to conduct independent of the misuse of confidential information. 274 P.3d at 331 (citation omitted). At issue is whether "the claim fails without allegations regarding misuse of information," in which case the UTSA preempts the claim. *Giles Constr.*, 2015 U.S. Dist. LEXIS 72722, at *19. The court finds that the fiduciary duty of loyalty claim does not "fail" without the allegation relating to the misuse of confidential information. By extension, PSS's claim of inducement of breach of the fiduciary duty of loyalty against Larsen and Sound Sleep also does not fail. Because PSS adequately pleaded its claim that Larsen and Sound Sleep knowingly induced Angus and Kilpack to breach their fiduciary duty of loyalty to PSS, the court denies the motion to dismiss with respect to this claim.

## VI.   Tortious Interference with Contract Claim Against Larsen and Sound Sleep (Count X)

Defendants Larsen and Sound Sleep argue that PSS's tenth cause of action for tortious interference with contract should be dismissed because the claim relates "only to the alleged misappropriation of trade secrets" and is therefore preempted by the UTSA. ECF No. 26 at 6. PSS argues that the claim should not be dismissed for two reasons: (1) the claim is based on a breach of contract and thus is preserved by the UTSA; and (2) the claim is not preempted because breaching the non-solicitation provisions of the contract does not rely on the misappropriation of confidential information. The court disagrees with both arguments.

A.  Nature of the Claim

It is well-established that, "unless a plaintiff can recover on a contract as a third party beneficiary or an assignee," only parties to the contract can sue and be sued under the contract. *See Holmes Dev., LLC v. Cook*, 48 P.3d 895, 908 (Utah 2002) (citations omitted).

PSS's tenth cause of action cannot be construed as a breach of contract action that is preserved under the UTSA. In its Complaint, PSS specifically alleges that, while Angus and Kilpack were bound by employment contracts with PSS, "[a]t all relevant times, Larsen and Sound Sleep were strangers to these contracts." ECF No. 9 ¶¶ 156–57. Because Larsen and Sound Sleep were "strangers" to the contracts between Angus, Kilpack, and PSS, they are neither parties to, nor third party beneficiaries or assignees of, the contracts. Thus, PSS cannot properly construe its tenth cause of action as one based on breach of contract since Larsen and Sound Sleep cannot be sued on these contracts. Additionally, intentional interference with a contract is recognized as a tort by the Restatement. *See* RESTATEMENT (SECOND) OF TORTS § 766 (Am. Law Inst. 1979). Indeed, PSS explicitly alleges its tenth cause of action against Larsen and Sound Sleep as one sounding in tort—

19

labeling the cause of action as "*TORTIOUS* INTERFERENCE WITH CONTRACT" and referring

to their conduct as "*tortious* interference." ECF No. 9 at 30, ¶ 161 (emphasis added). Construing

the tenth cause of action as one based on breach of contract contradicts the express allegations in

the Complaint. Thus, the court finds that PSS's tenth cause of action is one sounding in tort rather

than in contract.

      B.      Preemption Under the UTSA and Failure to State a Claim

      Because the court finds that PSS's tenth cause of action is one sounding in tort, subsection

(2)(b) of the UTSA's preemption provision applies, and PSS's tenth cause of action will only evade

preemption if it is "not based upon misappropriation of a trade secret." UTAH CODE

§ 13-24-8(2)(b).

      In support of its tenth cause of action, PSS alleges that Larsen and Sound Sleep

"intentionally induced or caused Angus and Kilpack to breach their employment contracts with

PSS," in particular by "intentionally induc[ing] Angus and Kilpack to disclose confidential

information" and by "intentionally induc[ing] Angus and Kilpack to solicit, entice, and/or induce

patients to switch providers from PSS to Sound Sleep." ECF No. 9 ¶¶ 158–60.  The court finds

that PSS's claim is preempted to the extent that it is based upon the misuse of confidential

information. *See CDC Restoration*, 274 P.3d at 330 ("[W]e conclude that a claim is preempted to

the extent that it is based on factual allegations supporting a misappropriation of trade secrets or

otherwise confidential information." (citation omitted)).

      Additionally, to the extent that PSS's claim is not based upon the misuse of confidential

information—that is, with respect to the allegation related to PSS intentionally inducing Angus

and Kilpack to solicit PSS patients in violation of their contracts—the court finds that this claim

fails. "A party is subject to liability for an intentional interference with *present* contractual relations

if he intentionally and improperly causes one of the parties not to perform the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991) (citing RESTATEMENT (SECOND) OF TORTS § 766). To state a claim of tortious interference with a contract, a plaintiff must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (citing *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982));[2] *St. Benedict's*, 811 P.2d at 201 (applying the *Leigh Furniture* test to a tortious interference with contract cause of action); *C.R. England v. Swift Transp. Co.*, 437 P.3d 343, 346 (Utah 2019) (affirming the *St. Benedict's* court's interpretation that the *Leigh Furniture* test articulated for intentional interference with prospective economic relations applies to the tort of intentional interference with contract). As analyzed in Sections I and II, Angus and Kilpack's alleged solicitation of PSS patients did not violate the express terms of their employment agreements. Thus, the court also dismisses this claim. *See St. Benedict's*, 811 P.2d at 201 (finding that "no claim for interference with *present* contractual relations can lie" in part when there was no allegation that the parties to the contract had breached the contract).

## VII.   Tortious Interference with Business Relationship or Expectancy Claim Against Larsen and Sound Sleep (Count XI)

Defendants Larsen and Sound Sleep argue that PSS's eleventh cause of action for tortious interference with business relationship or expectancy should be dismissed because the supporting allegations relate to misappropriation of confidential information and are thus preempted by the

---

[2] *Eldridge* overruled *Leigh Furniture*, which permitted the second element of a claim for tortious interference with economic relations or expectancies to also be satisfied by evidence of an improper purpose. *Eldridge*, 345 P.3d at 565 (citing *Leigh Furniture*, 657 P.2d at 304).

UTSA. PSS argues that the claim is not preempted because it is based "on actual solicitation rather than misappropriation of a trade secret." ECF No. 36 at 12.

To state a claim for tortious interference with economic relations or expectancies, a plaintiff must allege "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge*, 345 P.3d at 565 (citation omitted). In support of its claim, PSS alleges that Larsen and Sound Sleep intentionally interfered with the "relationships and contracts between PSS and Angus and Kilpack, as well as with the business and contractual relationships between PSS and the patients previously serviced by Angus and Kilpack." ECF No. 9 ¶ 166. PSS specifically alleges that Larsen and Sound Sleep "encouraged, permitted, facilitated, allowed, and/or aided and abetted Angus violating the restrictive covenants within the Angus Agreement, with the objective of unlawfully soliciting PSS's patients and unlawfully utilizing PSS's proprietary sleep dentistry practice forms and marketing strategies." *Id.* ¶ 167. PSS alleges that it was damaged because of Larsen and Sound Sleep's tortious conduct. In short, PSS alleges that Larsen and Sound Sleep intentionally aided Angus and Kilpack in violating the contractual and fiduciary duties that they owed to PSS with the objective of unlawfully soliciting PSS patients and using PSS's confidential information.

The court finds that PSS's claim is preempted to the extent that it is based upon the misuse of confidential information. *See CDC Restoration*, 274 P.3d at 330. The court also finds that the claim fails to the extent that it rests upon the allegation that Angus and Kilpack breached the solicitation provision in their contracts, as analyzed above in Sections I and II. However, the court finds that PSS has pleaded sufficient facts to state a claim for tortious interference with business relationship or expectancy as it relates to Larsen and Sound Sleep unlawfully aiding Angus and

Kilpack in breaching their fiduciary duty of loyalty, as previously discussed in Sections IV and V. Accordingly, the court denies the motion to dismiss to this extent.

## VIII.   Civil Conspiracy Claim Against All Defendants (Count XII)

All Defendants argue that PSS's twelfth cause of action for civil conspiracy is preempted by the UTSA because it is based on allegations that Defendants conspired to misappropriate PSS's confidential information. The court disagrees.

"To prove civil conspiracy, five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'" *Peterson v. Delta Air Lines*, 42 P.3d 1253, 1257 (Utah Ct. App. 2002) (citation omitted). "Under Utah law, civil conspiracy need not be pleaded with particularity unless the act underlying the conspiracy is a fraud-based tort." *Surgenex, LLC v. Predictive Therapeutics, LLC*, No. 2:19-CV-295, 2020 U.S. Dist. LEXIS 91750, at *25 (D. Utah May 26, 2020) (citation omitted) (unpublished). When the underlying act is trade secret misappropriation, "a heightened pleading standard does not apply." *Id.* at *25 n.105.

For its civil conspiracy claim, PSS first alleges that all four defendants agreed to accomplish "the acts constituting the violations of PSS's rights giving rise to the causes of action alleged in the Amended Complaint." ECF No. 9 ¶ 170. As detailed in preceding sections, some of those acts are "based on the same factual allegations as [PSS's] misappropriation of trade secrets claim" and are thus preempted. *CDC Restoration*, 274 P.3d at 333. Second, PSS alleges that all four defendants worked together to "harm PSS by misappropriating PSS's trade secrets." ECF No. 9 ¶ 172. This allegation is certainly based on the same factual allegations as PSS's misappropriation of trade secrets claim. Third, PSS alleges that all four defendants worked together to "tortiously

23

interfere with PSS's business and contractual relationships with its patients" and breached the terms of the employment agreement. *Id.* ¶ 171. Based on the preceding analysis of these underlying claims, the court finds that this allegation is not grounded purely in the misappropriation of confidential information. Finally, PSS alleges that it suffered damages because of Defendants' conduct. *Id.* ¶ 173.

As previously noted, the UTSA "does not affect . . . other civil remedies that are not based upon misappropriation of a trade secret." UTAH CODE ANN. § 13-24-8(b). Because the court has found that some of PSS's claims against Defendants and allegations of civil conspiracy are not grounded entirely in the misappropriation of confidential information, the court finds that PSS's civil conspiracy claim is not entirely preempted by the UTSA. *See CDC Restoration*, 274 P.3d at 333 (finding that a civil conspiracy claim was preempted by the UTSA when it rested *entirely* on claims that were "based on the same factual allegations" related to a misappropriation of trade secrets claim). Accordingly, the court denies Defendants' motion to dismiss on these grounds.

## IX.    Constructive Trust Claim Against Sound Sleep (Count XIII)

PSS alleges that it is "entitled to have a constructive trust in its favor imposed on all proceeds" stemming from Sound Sleep's use of PSS's confidential information and Angus, Kilpack, Larsen, and Sound Sleep's misuse of the same. ECF No. 9 ¶ 175. Defendants Larsen and Sound Sleep argue that this cause of action should be dismissed because a constructive trust is a remedy, not a cause of action. PSS did not object to this dismissal in its response brief.

It is well established that a constructive trust is a legal remedy imposed when a party has been unjustly enriched, not a cause of action. *See Rawlings v. Rawlings*, 240 P.3d 754, 760–61 (Utah 2010). Accordingly, the court dismisses PSS's thirteenth cause of action.

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART Defendants' Motions for Partial Dismissal (ECF Nos. 22, 26) and orders as follows:

1. **COUNT III**: The court GRANTS the Motion to Dismiss with respect to PSS's claim against Angus for breach of contract based on violation of the covenant not to solicit.

2. **COUNT IV**: The court GRANTS the Motion to Dismiss with respect to PSS's claim against Kilpack for breach of contract based on violation of the covenant not to solicit.

3. **COUNT VI**: The court DENIES the Motion to Dismiss with respect to PSS's claim against Kilpack for breach of contract based on violation of confidentiality and nondisclosure.

4. **COUNT VII**: The court GRANTS the Motion to Dismiss with respect to PSS's claim against Angus and Kilpack for breach of the fiduciary duty of confidentiality.

5. **COUNT VIII**: The court DENIES the Motion to Dismiss with respect to PSS's claim against Angus and Kilpack for breach of the fiduciary duty of loyalty.

6. **COUNT IX**: The court GRANTS the Motion to Dismiss with respect to PSS's claim against Larsen and Sound Sleep for inducement of breach of the fiduciary duty of confidentiality and DENIES the Motion to Dismiss with respect to PSS's claim against Larsen and Sound Sleep for inducement of breach of the fiduciary duty of loyalty.

7. **COUNT X**: The court GRANTS the Motion to Dismiss with respect to PSS's claim against Larsen and Sound Sleep for tortious interference with contract.

8. **COUNT XI**: The court DENIES the Motion to Dismiss with PSS's claim against Larsen and Sound Sleep for tortious interference with business relationships or expectancies as the claim relates to Angus and Kilpack's fiduciary duty of loyalty to PSS.

9. **COUNT XII**: The court DENIES the Motion to Dismiss with respect to PSS's claim against all Defendants for civil conspiracy.

10. **COUNT XIII**: The court GRANTS the Motion to Dismiss with respect to PSS's claim for a constructive trust against Sound Sleep.


DATED March 30, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge